UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| RUSCO OPERATING, LLC, a wholly owned subsidiary of RIG UP, INC. f/k/a WORKRISE TECHNOLOGIES, INC., <br> Plaintiff, <br><br> V. <br><br> NATIONAL LABOR RELATIONS BOARD, WILLIAM COWEN, in his official capacity as the purported Acting General Counsel of the National Labor Relations Board, CORNELE A. OVERSTREET, in his official capacity as Regional Director for Region 28 of the National Labor Relations Board, and JOHN DOE, in their official capacity as an Administrative Law Judge of the National Labor Relations Board, <br> Defendants. | § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 6:25-cv-00555 <br><br><br><br> JURY DEMANDED |

**PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Rusco Operating, LLC, a wholly owned subsidiary of Rig Up, Inc. f/k/a Workrise Technologies, Inc. ("Plaintiff"), brings this action against Defendants National Labor Relations Board ("NLRB"), the purported NLRB Acting General Counsel William Cowen ("Cowen"), NLRB Regional Director for Region 28 Cornele A. Overstreet ("Overstreet"), and unassigned Administrative Law Judge John Doe ("Doe") (collectively "Defendants") for declaratory and injunctive relief and states as follows:

### I.   INTRODUCTION

1. This action challenges the constitutionality of subjecting Plaintiff to ongoing NLRB administrative proceedings that: (i) withdraw adjudication of private-rights, legal claims from Article III courts and juries in violation of Article III and the Seventh Amendment; (ii) are presided over by administrative officials unconstitutionally insulated from presidential control in violation

of Article II; and (iii) proceed notwithstanding foundational defects in the authority of the NLRB's Acting General Counsel who issued the complaint in the underlying proceedings. The pending administrative case, *RUSCO Operating, LLC, a wholly owned subsidiary of Workrise Technologies, Inc. f/k/a Rig Up, Inc. and Joshua Aaron Palczynsky*, Case 28-CA-292156 (the "Proceeding"), arises under the National Labor Relations Act ("NLRA") and will culminate in a hearing before an unconstitutionally unaccountable administrative law judge ("ALJ") without a jury and without the procedural and evidentiary protections of an Article III court.

2. The Supreme Court's decision in *Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. 175 (2023) confirms this Court's jurisdiction to hear pre-enforcement structural constitutional challenges to agency adjudicatory schemes and to provide immediate equitable relief because being subjected to unconstitutional administrative authority is a "here-and-now" injury that cannot be remedied post hoc. This Court's opinion in *Space Exploration Technologies Corp. v. NLRB*, 741 F. Supp.3d 630 (W.D. Tex. 2024) ("*SpaceX*"), affirmed by the Fifth Circuit (*see Space Expl. Techs. Corp. v. NLRB*, 151 F.4th 761 (5th Cir. 2025) ("*SpaceX II*")): (i) squarely addresses and rejects the same jurisdictional and remedial arguments the government will likely raise here, (ii) confirms irreparability of the injury from unconstitutional proceedings, and (iii) holds that multi-layer removal protections for ALJs and the Board violate Article II.

3. Plaintiff does not seek adjudication of any merits issues underlying the NLRB's unfair labor practice ("ULP") allegations. Rather, Plaintiff seeks to vindicate core constitutional guarantees and to ensure any adjudication occurs within the confines of the protections guaranteed by the Constitution.

## II. JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because the claims arise under the United States Constitution as applied to a federal statute and because Plaintiffs seek relief against officers of the United States. The Supreme Court has held that district courts have federal-question jurisdiction under § 1331 to review analogous claims that an agency's enforcement structure violates the Constitution. *Axon*, 598 U.S. at 195. No provision in the NLRA or any "other law takes that power away." *Id.* at 211 (Thomas, J., concurring).

5. This Court has the authority to grant injunctive and declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201–02, and its inherent equitable powers.

6. Venue is proper in this District under 28 U.S.C. § 1391(e)(1)(B) because Plaintiff resides and suffers injury here, and Defendants act in their official capacities through agency authority exercised in this District.

## III. PARTIES

7. Plaintiff is a foreign limited liability company with its principal place of business in this District.

8. Defendant NLRB is an administrative agency of the United States, headquartered in Washington, D.C. The NLRB enforces the NLRA. Under the NLRA, the NLRB is "empowered . . . to prevent any person from engaging in any unfair labor practice." *See* 29 U.S.C. § 160.

9. Defendant William Cowen is the putative Acting General Counsel of the NLRB. He is sued in his official capacity.

10. Defendant Cornele A. Overstreet is the NLRB Regional Director for Region 28 and is sued in his official capacity.

11. Defendant Doe is an ALJ of the NLRB assigned to preside over the Proceeding against Plaintiff. An ALJ has not yet been assigned to the Proceeding and the ALJ's identity is unknown. Doe is sued in his or her official capacity.

## IV.   FACTUAL BACKGROUND

### A.   THE UNDERLYING PROCEEDING

12. NLRB Regional Director Overstreet, on behalf of purported Acting General Counsel Cowen, filed an administrative complaint against Plaintiff on August 1, 2025.[1] According to the Complaint, Plaintiff violated the NLRA by requiring "employees of Oil Patch Group, Inc. to sign" an agreement containing an allegedly overbroad arbitration agreement.[2] According to the NLRB, this practice constitutes an unfair labor practice.

13. The matter will proceed to a hearing before an NLRB ALJ.

### B.   BACKGROUND ON NLRB/NLRA

14. The NLRA authorizes the Board "to prevent any person from engaging in any unfair labor practice . . . affecting commerce," after conducting a hearing. 29 U.S.C. § 160(a), (b). In these hearings, the Board acts as investigator, prosecutor, judge, jury, and appellate court (with fact-finding power). The "Government's case" is conducted by NLRB-employed attorneys presented to an NLRB-employed ALJ. 29 C.F.R. §§ 101.10(a), 101.2, .4, .8 (describing procedures).

---

[1] *See* Ex. A.

[2] *See* Ex. A at p. 2.

15. In these hearings, the Federal Rules of Evidence and of Civil Procedure apply only "so far as practicable." 29 C.F.R. § 101.10(a). At the end of the hearing, the ALJ prepares a decision with findings of fact, legal conclusions, and a recommended remedy, § 101.11(a), which according to the Board, purportedly may include compensatory and consequential damages. *See Thryv, Inc.*, 372 N.L.R.B. No. 22, 2022 WL 17974951 (Dec. 13, 2022).

16. An ALJ's decision becomes final unless a party files "exceptions"—*i.e.*, an appeal—to the NLRB. 29 C.F.R. §§ 101.11(b), .12(b). If an appeal is filed, the NLRB itself reviews the entire record. *Id.* § 101.12(a). The NLRB then issues a decision and order in which it may "adopt, modify, or reject" the ALJs findings of fact and recommendations. *Id.*

C.  **THE CONSTITUTIONAL STAKES**

17. The Proceeding will adjudicate legal claims and impose legal remedies quintessentially akin to common-law causes of action. The Seventh Amendment and Article III entitle Plaintiff to an Article III court and a jury for such claims. *See SEC v. Jarkesy*, 603 U.S. 109, 120–121 (2024). Congress may not "conjure away" the jury right or Article III adjudication by assigning traditional private-rights damages claims to an administrative agency. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989).

18. Separately, NLRB ALJs and Board Members are insulated by multiple layers of for-cause removal protections that violate Article II. Fifth Circuit precedent confirms those protections are unconstitutional. *See SEC v. Jarkesy*, 34 F.4th 446, 465 (5th Cir. 2022) ("*Jarkesy I*"); *SpaceX II*, 151 F.4th at 780.

19. Under *Axon* and *SpaceX II*, being subjected to these unconstitutional proceedings is a present, irreparable injury that warrants immediate equitable relief. *See SpaceX II*, 151 F.4th at 780 (citing and applying *Axon*, 598 U.S. at 191). Severability does not bar preliminary injunctive relief because severance is a merits-stage inquiry; a court cannot enter a "preliminary declaration," and an injunction is necessary to preserve meaningful relief. *See SpaceX*, 741 F. Supp. 3d at 638; *SpaceX II*, 151 F.4th at 773 (explaining that at the preliminary injunction stage "the severability inquiry is premature and belongs to the merits phase, when the court considers final relief.").

V.    CAUSES OF ACTION

**Count 1:    The ALJ's Adjudication of these Legal Claims Violates Article III and the separation of powers.**

20. Plaintiff re-alleges and incorporates the foregoing paragraphs.

21. Article III vests the judicial Power in the federal courts. U.S. Const. art. III, § 1. Congress may not withdraw from Article III any matter that is the subject of a suit at common law, in equity, or admiralty. *See Jarkesy*, 603 U.S. at 132; *id.* at 127 ("Under the basic concept of separation of powers that flows from the scheme of a tripartite government adopted in the Constitution, 'the judicial Power of the United States' cannot be shared with the other branches.").

22. Congress's attempt to vest the NLRB with judicial power violates the separation of powers implemented by the Constitution. Subjecting Plaintiff to an administrative judiciary is a constitutional violation that results in a "here-and-now" injury. *See Axon*, 598 U.S. at 191; *SpaceX II*, 151 F.4th at 780. Under *Axon*, *SpaceX,* and *SpaceX II*, failure to enjoin the Proceeding from advancing will cause Plaintiff irreparable injury as a matter of law. As a result, this Court should enter a preliminary injunction.

23. Through the underlying Proceeding, the NLRB seeks to restrict Plaintiff's private rights outside Article III courts and deny them their right to a "fair trial in a fair tribunal." *In re Murchison*, 349 U.S. 133, 136 (1955). Post-hearing review in an appellate court does not save this unconstitutional process because when private rights are at issue, parties are entitled to an Article III proceeding in the first instance. *See* Caleb E. Nelson, *Adjudication in the Political Branches*, 107 Colum. L. Rev. 559, 590 (2007) ("When core private rights are at stake, [] not just any sort of 'judicial' involvement [will] do," and courts must "be able to exercise their own judgment" about the details relevant to a particular case or controversy.).

**Count 2:      The ALJ's Adjudication of these Legal Claims without a Jury Violates Plaintiff's Seventh Amendment Rights.**

24. Plaintiff re-alleges and incorporates the foregoing paragraphs.

25. The Seventh Amendment provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII.

26. "The Seventh Amendment extends to a particular statutory claim if the claim is 'legal in nature.'" *Jarkesy*, 603 U.S. at 122 (quoting *Granfinanciera*, 492 U.S. at 53). "To determine whether a suit is legal in nature" courts are "to consider the cause of action and the remedy it provides." *Id.* at 122–23.

27. Under the NLRA, employers found liable for a ULP can be required to reinstate the employee "with or without back pay," 29 U.S.C. § 160(c), a remedy the Supreme Court holds to be equitable, *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937). In 2022, the NLRB "revisit[ed]" this precedent and adopted a new policy—nine decades after the NLRA was adopted—requiring compensation for all "direct or foreseeable pecuniary harms" from ULPs.

*Thryv*, 2022 WL 17974951, at *9–10. *Thryv* was made official NLRB policy on April 8, 2024, with the issuance of Memorandum GC 24-04 from former General Counsel Jennifer A. Abruzzo.

28. Although Defendant Cowen issued a Memorandum on February 14, 2025, rescinding GC 24-04, it is unclear whether Defendant Cowen, Defendant Overstreet, or Defendant NLRB will seek *Thryv* remedies as part of the proceeding. This issue is complicated by the fact that Defendant Cowen may have been acting without authority when he purported to rescind GC 24-04.

29. If Defendants seek *Thryv* remedies against Plaintiff, Plaintiff is under threat of being deprived its Seventh Amendment right to a jury trial for a claim that is tort-like in nature. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709–11 (1999); *id.* at 708 (explaining that a suit at common law includes any "suit[] in which *legal* rights [a]re to be ascertained and determined.").

30. Without interim injunctive relief from this Court, legal claims will be improperly adjudicated by an administrator instead of a jury in an Article III court. Unless Defendants are enjoined from moving forward with the NLRB proceeding in place of an Article III proceeding before a jury, Plaintiffs will be irreparably injured. *Axon*, 598 U.S. at 191; *SpaceX II*, 151 F.4th at 780 (explaining that "being subjected to unconstitutional agency authority" is an irreparable injury (quoting *Axon*, 598 U.S. at 890)).

31. The harm to Plaintiffs, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted.

32. Plaintiffs have a strong likelihood of success on this claim for reasons detailed above.

33. The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting constitutional rights.

**Count 3:     The Acting General Counsel's Actions in Issuing the Administrative Complaint are Void Because they Violate the NLRA.**

34. Plaintiff re-alleges and incorporates the foregoing paragraphs.

35. Section 3(d) of the NLRA provides that "[t]here shall be a General Counsel of the Board who shall be appointed by the President . . . for a term of four years." 29 U.S.C. § 153(d). In the event of a vacancy in the General Counsel's office, "the President is authorized to designate the officer or employee who shall act as General Counsel during such vacancy." *Id.* However, "no such person . . . so designated shall so act [ ] for more than forty days when the Congress is in session unless a nomination to fill such vacancy shall have been submitted to the Senate," or after the adjournment of the Senate. *Id.*

36. President Trump appointed Cowen Acting General Counsel on or about February 3, 2025.

37. Cowen's 40 days as Acting General Counsel expired on or about March 12, 2025. No nomination to fill the vacancy in the General Counsel position was submitted to the Senate until on or about March 25, 2025, when President Trump nominated Crystal Carey. As a result, Mr. Cowen's appointment under 29 U.S.C. § 153(d) expired on or about March 12, 2025.

38. On August 1, 2025, the purported Acting General Counsel, William Cowen, through the Regional Director of Region 28, Cornele Overstreet, issued the underlying administrative complaint against Plaintiff. However, at the time the underlying administrative complaint was issued, Cowen was not acting validly as Acting General Counsel pursuant to Section 3(d) of the NLRA, and the complaint is therefore invalid. *See* 29 U.S.C. § 153(d); *United States v. Comey*, --- F. Supp.3d ---, 2025 WL 3266932, at *11 (E.D. Va. Nov. 24, 2025)

(concluding that "all actions flowing from . . . defective appointment . . . constitute unlawful exercises of executive power and must be set aside"); *United States v. James*, --- F. Supp.3d ---, 2025 WL 3266931, at *10 (E.D. Va. Nov. 24, 2025) (same); *See Collins v. Yellen*, 594 U.S. 220, 276 (2021) (Gorsuch, J., concurring in part) (explaining that when an officer is "unconstitutionally appointed, "governmental action is taken by someone erroneously claiming the mantle of executive power – and thus taken with no authority at all"); *Consumer Fin. Prot. Bureau v. All Am. Check Cashing, Inc.*, 33 F.4th 218, 241 (5th Cir. 2022) (Jones, J., concurring) (explaining that invalidation of agency action "follows directly from the government actor's lack of authority to take the challenged action in the first place.").

39. It is not certain whether a legitimately serving Acting General Counsel, or General Counsel, would have issued the underlying administrative complaint. This "uncertainty is sufficient to conclude" that Acting NLRB General Counsel Cowen's temporary appointment is a "non-harmless" violation of the law. *See NLRB v. SW Gen., Inc.*, 796 F.3d 67, 80 (D.D.C. 2015), *aff'd* 580 U.S. 288 (2017).

40. Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now injury" ripe for judicial intervention. *See Axon*, 598 U.S. at 191 (quoting *Seila L. LLC v. Consumer Fin. Protection Bureau*, 591 U.S. 197, 212 (2020)).

41. Without interim injunctive relief, Plaintiff will be required to undergo an illegitimate proceeding in violation of its due process rights.

42. Plaintiff bears a strong likelihood of success on the merits for the reasons articulated above.

43. If the NLRB is not enjoined from proceeding against Plaintiff in the related administrative hearing, Plaintiff will be irreparably harmed because it will have endured a proceeding authorized by an individual who enjoys no such authorization.

44. The balance of equities tips in Plaintiff's favor because, should the Proceeding go forward, Plaintiff will lose its right to undergo a legitimate proceeding as it will have endured a proceeding authorized by an illegitimate decisionmaker.

45. It is in the public interest to remedy the violation here in order to protect Americans' rights under the NLRA and to ensure Congressional statutes related to appointments are followed.

46. Due to the ongoing violation, Plaintiff continues to be harmed by the NLRB and the underlying administrative complaint must be dismissed.

**Count 4:    NLRB ALJs are Unconstitutionally Insulated from Removal.**

47. Plaintiff re-alleges and incorporates the foregoing paragraphs.

48. NLRB ALJs are "Officers of the United States" under the Constitution's Appointments Clause—not mere employees—because among other things, they hold continuing offices through which they preside over adversarial hearings, receive testimony, shape the administrative record, and prepare proposed findings and opinions. *See Lucia v. SEC*, 585 U.S. 237, 247–251 (2018); *Jarkesy v. SEC*, 34 F.4th 446, 464 (5th Cir. 2022) ("*Jarkesy I*"). These activities, even though they take a judicial form, are still exercises of the executive power for which the President is ultimately responsible. *United States v. Arthrex*, 594 U.S. 1, 17 (2021).

49. The NLRB may remove ALJs "only for good cause established and determined by the Merit Systems Protection Board [("MSPB")] on the record after opportunity for hearing before the [MSPB]." 5 U.S.C. § 7521(a). In turn, by statute, Members of the MSPB are removable only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). And under the

NLRA, Board Members are removable only "for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).

50. Given NLRB ALJs' status as "officers" of an executive agency, "they are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy I*, 34 F.4th at 464.

51. The statutes' provision of at least two layers of for-cause removal protection prevents that exercise of presidential authority and thus violates Article II of the Constitution. *See Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 492–508 (2010); *Jarkesy I*, F.4th at 463–65; *SpaceX II*, 151 F.4th at 778–79.

52. But for these unlawful removal restrictions, either the ALJ assigned to Plaintiff's administrative case or the NLRB Members who bear responsibility to supervise and exercise control over the ALJ would face the prospect of removal by the President based on their conduct during the proceedings.

53. Being subject to unconstitutional agency authority—including proceedings before unconstitutionally insulated agency officials—qualifies as a "here-and-now injury" under well-settled precedent. *Axon*, 598 U.S. at 191; *SpaceX II*, 151 F.4th at 780.

54. Accordingly, Plaintiff is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [Plaintiff is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

55. Moreover, without interim injunctive relief from this Court, Plaintiff will be required to undergo an unconstitutional proceeding before an insufficiently accountable agency official.

56. Plaintiff bears a strong likelihood of showing that the NLRB ALJ's are unconstitutionally insulated from Presidential oversight.

57. Unless the NLRB is enjoined from proceeding against Plaintiff before an ALJ unconstitutionally insulated from presidential oversight, Plaintiff will be irreparably harmed.

58. Further, if the NLRB Members, on recommendation from the ALJ, issue a final order against Plaintiff, the constitutional injury will likely be irremediable. The Supreme Court has stated that those subject to an unconstitutional proceeding by improperly insulated administrative agency officials often have no retrospective redress after the fact. *See Collins*, 594 U.S. at 257.

59. The harm to Plaintiff, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted.

60. The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

**Count 5:   NLRB Board Members are Unconstitutionally Insulated from Removal.**

61. Plaintiff re-alleges and incorporates the foregoing paragraphs.

62. The NLRB's Members may be removed by the President only "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a).

63. Yet the NLRB's Members exercise substantial executive power under the Constitution in administering and enforcing the provisions of the NLRA.

64. For example, Section 10(j) of the NLRA, 29 U.S.C. § 160(j), gives the Board authority to exercise quintessentially prosecutorial power in federal district courts: "The Board shall have the power, upon issuance of [an administrative] complaint as provided in [29 U.S.C. § 160(b)] charging that any person has engaged in or is engaging in an unfair labor practice, to

petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order." 29 U.S.C. § 160(j); *see also, e.g.*, *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010) ("Petition power under § 10(j) is prosecutorial in nature[.]").

65. More generally, the NLRB also enforces and implements the NLRA in many ways, including by determining appropriate units for the purpose of collective bargaining, directing representation elections, deciding unfair labor practice charges, and seeking enforcement of its unfair labor practice orders in federal court. 29 U.S.C. §§ 159, 160.

66. In these and other ways, the NLRB wields substantial prosecutorial, rulemaking, policymaking, and adjudicative authority.

67. The Supreme Court has made clear, moreover, that even when "the activities of administrative agencies 'take "legislative" and "judicial" forms,' 'they are exercises of—indeed, under our constitutional structure they *must be* exercises of—the 'executive power.'" *Seila L.*, 140 S. Ct. at 2198 n.2 (citation omitted).

68. Also, the removal protections for NLRB Members are unusually strict. In contrast to more common provisions that permit removal "for inefficiency, neglect of duty, or malfeasance in office," *Humphrey's Executor v. United States*, 295 U.S. 602, 620 (1935) (quoting 15 U.S.C. § 41), the NLRA permits removal only "for neglect of duty or malfeasance in office," and explicitly prohibits removal for any other cause, like inefficiency. 29 U.S.C. § 153(a).

69. Moreover, unlike other federal agencies, the NLRB has a distinctive structure that divides agency authority between its Members and its General Counsel, who is a politically accountable official responsible for deciding which cases to bring before the NLRB Members. *See*

29 U.S.C. § 153(d); *Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 441 (5th Cir. 2022); *NLRB v. United Food & Com. Workers Union, Loc. 23*, 484 U.S. 112, 128–29 (1987).

70. The combination of the NLRB's unique structure, the NLRB Members' especially strict removal protections, and their exercise of substantial executive power violates Article II of the Constitution. *SpaceX II*, 151 F.4th at 780–81.

71. But for these unlawful removal restrictions, the NLRB Members would face the prospect of removal by the President—including based on their conduct during the proceedings against Plaintiff.

72. Being subject to proceedings before unconstitutionally insulated agency officials is a "here-and-now injury" justifying pre-enforcement judicial intervention. *Axon*, 143 S. Ct. at 903 (citation omitted); *SpaceX II*, 151 F.4th at 781–82; *Cochran v. SEC*, 20 F.4th 194, 210 n.16, 212–13 (5th Cir. 2021).

73. So, here too, Plaintiff is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [Plaintiff is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

74. Moreover, without interim injunctive relief from this Court, Plaintiff will be required to undergo an unconstitutional proceeding before an insufficiently accountable agency official. *SpaceX II*, 151 F.4th at 781–82.

75. Plaintiff bears a strong likelihood of showing that the NLRB Members are unconstitutionally insulated from presidential oversight. *Id.*

76. Unless the NLRB is enjoined from proceeding against Plaintiff before an NLRB whose Members are unconstitutionally insulated from presidential oversight, Plaintiff will be irreparably harmed. *Id.*

77. Further, if the NLRB Members, on recommendation from the ALJ, issue a final order against Plaintiff, the harm will likely be irremediable because of the difficulty of obtaining retrospective redress for an unconstitutional proceeding by improperly insulated administrative agency officials. *See Collins*, 594 U.S. at 257.

78. The harm to Plaintiff, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted.

79. The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights.

## VI.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Rusco Operating, LLC, a wholly owned subsidiary of Rig Up, Inc. f/k/a Workrise Technologies, Inc., hereby requests the Court order the following relief and enter a judgment:

1. Declaring that:
    a. The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB ALJs, including 5 U.S.C. § 7521(a) are unconstitutional; and
    b. The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB Members, including 29 U.S.C. § 153(a), are unconstitutional.

2. Preliminarily enjoining Defendants from subjecting Plaintiff to unconstitutionally structured administrative proceedings pending the final resolution of this action;

3. Awarding Plaintiff its costs and expenses incurred in bringing this action, including, but not limited to, reasonable attorney's fees; and

4. Awarding such other and further relief, whether at law or in equity, as the Court deems just and proper.

Respectfully submitted,

JACKSON WALKER LLP

*/s/ David Schlottman*
David Schlottman
Texas Bar No. 24083807
dschlottman@jw.com
John V. Jansonius
Texas Bar No. 10571900
jjansonius@jw.com
Michael A. Drab
Texas Bar No. 24115826
mdrab@jw.com
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6068 – Phone
(214) 953-5822 - Fax

ATTORNEYS FOR PLAINTIFF